WARREN COUNTY BOARD
OF HEALTH, Plaintiff,

v.

WARREN COUNTY BOARD OF
SUPERVISORS, Appellee,

Vernon Hunerdosse and Bobette
Miller, Intervenors–
Appellants.

No. 01–1732.

Supreme Court of Iowa.

Dec. 18, 2002.

Shelley A. Horak of Shelley Horak and Associates, P.C., Sioux City, and Ward A. Rouse of Duffy, Spellman, Rouse, Lynch & Clark, Des Moines, for appellants.

Hugh J. Cain of Hopkins & Huebner, P.C., Des Moines, and Kevin Parker, County Attorney, for appellee.

CADY, Justice.

In this appeal, we must determine if a county board of health delegated its authority over employment matters to a county board of supervisors so that it had no authority to terminate a public health employee and increase the wages of a public health employee. We conclude the district court erred in granting summary judgment for the board of supervisors.

We reverse and remand for further proceedings.

## I. Background Facts and Proceedings.

This case began as a dispute between the Warren County Board of Health and the Warren County Board of Supervisors over the authority to make employment decisions concerning employees of the Warren County Department of Environmental Health and Warren County Health Services. The legal dispute emanated from two separate factual circumstances involving two different employees, who eventually intervened in the lawsuit to pursue the claims.

The first dispute began on July 5, 1997, when the Board of Health voted to raise the wages of an employee of County Health Services, Bobette Miller. Miller was a full time secretary at health services, and the Board of Health voted to increase her hourly wage based upon her exceptional service. The amount of the raise was within the approved budget for health services and within the line item for salaries. The Board of Health submitted the raise to the Board of Supervisors, who refused to approve the raise. On October 1, 1998, the Board of Health again approved a raise in Miller's hourly wage. As before, the proposed increase was within the budgeted amount for salaries. As before, the Board of Supervisors refused to approve the raise.

The second dispute began on October 1, 1998, when the Board of Health voted to terminate the employment of the director of the Department of Environmental Health, Rick Wilson. The chairman of the Board of Supervisors subsequently told Wilson that he was not discharged and could continue to serve as the director of the Department of Environmental Health. Consequently, Wilson continued in his em-

ployment. The Board of Supervisors later refused to enforce the decision by the Board of Health to terminate Wilson, despite various formal requests by the Board of Health to do so.

The Board of Health then instituted an action in district court against the Board of Supervisors requesting the court to determine the rights of the parties in the disputes and compel the Board of Supervisors to terminate Wilson and increase the wages of Miller. In its answer to the petition, the Board of Supervisors claimed the Board of Health had vested, delegated, or transferred its employment authority to the Board of Supervisors.

The delegation claim was based on the history of past dealings between the Board of Health and the Board of Supervisors. In 1991, the Board of Supervisors developed a county employment manual containing policies and procedures to serve as guidelines for employment matters of county employees. The Board of Health subscribed to the manual. The Board of Supervisors also adopted a county classification and pay plan, which the Board of Health accepted on January 9, 1992. The plan provided for merit step increases in pay according to an employee's designated grade, with a maximum step level. There was further evidence to suggest that the Board of Health permitted the Board of Supervisors to control various employment decisions regarding other employees in the past. For example, various records of the Board of Supervisors indicated it appointed or approved the hiring of several public health employees in the past, and authorized the Board of Health to hire other employees.

On December 20, 1999, the Board of Health voted to hire a new director of the Department of Environmental Health,

Vernon Hunerdosse. Hunerdosse, along with Miller, then moved to intervene in the action filed by the Board of Health. The court granted intervention.

Hunerdosse never assumed the position of director of environmental health. Instead, Wilson continued to hold the position. On January 14, 2000, the Board of Health voted to dismiss the lawsuit against the Board of Supervisors, terminate Hunerdosse, and confirm Wilson as the director of the Department of Environmental Health. The Board of Health then dismissed its claims against the Board of Supervisors on January 19, 2000.[1]

Both Hunerdosse and Miller, as well as the Board of Supervisors, filed motions for summary judgment. The district court found the Board of Health had delegated its authority over employment matters to the Board of Supervisors by its prior course of conduct, as well as its adoption of the county personnel manual and the county classification and pay plan. The district court granted summary judgment for the Board of Supervisors.

Miller and Hunerdosse appeal. They claim the Board of Health had the exclusive authority over employees who perform county public health functions, and this authority was never delegated or divested to the Board of Supervisors.

## II. Scope of Review.

 Our review in this case from an order granting summary judgment is for errors at law. Our task is to determine whether the law was properly applied by the district court. *See Hansen v. State,* 528 N.W.2d 547, 549 (Iowa 1995).

---

1. The district court determined Hunerdosse and Miller had standing to maintain the action after the dismissal filed by the Board of Health. This issue is not raised on appeal.

## III. Background.

Under our form of government in Iowa, counties are empowered to perform any function to "protect and preserve the rights, privileges, and property of the county or of its residents, and to preserve and improve the peace, safety, health, welfare, comfort, and convenience of its residents" except as limited by the constitution or a statute. Iowa Code § 331.301(1) (1999). This broad power is a part of county home rule, and is vested in the county board of supervisors. *Id.* § 331.301(2); Iowa Const. amend. 25. The board of supervisors, therefore, serves as the governing body of county government. However, our legislature has carved out an exception in the area of public health. Under chapter 137, jurisdiction over public health matters within a county is granted to county or district boards of health. *See generally id.* §§ 137.1–.22. These local boards have general powers to enforce state health laws, enforce rules and orders of the state department of health, make and enforce other public health rules and regulations, and "[e]mploy persons as necessary for the efficient discharge of its duties." *Id.* § 137.6(4). Additionally, local boards are empowered to provide "personal and environmental health services," engage in or contract for public health activities and projects with public and private entities and individuals, charge fees for personal health services, and "issue licenses or permits and charge reasonable fees for collection or disposal of solid waste" as well as "construction or operation of private water supplies or sewage disposal facilities." *Id.* § 137.7.

Like other Iowa counties, Warren County has a local board of health. It is known as Warren County Board of Health. The board consists of five members. · *See id.* § 137.3. Warren County also has a department of environmental health. This department administers various programs such as water waste disposal, private wells, waste tires, radon, and general environmental health matters. Warren County also has a health service department that conducts communicable disease investigations and provides immunizations, screening. clinics, material and health services, health education, and preventative health care.

◼ Given this legislative scheme governing public health matters, the Board of Supervisors does· not assert that the employees of the Department of Environmental Health and the Health Services Department do not perform functions relating to chapter 137 ·or that a board·of health has no authority to terminate persons· employed by the board or to establish wages for public health department employees. Consequently, these are not issues we address on appeal.[2] Instead, the Board of Supervisors asserts that the Board of Health delegated or ceded its authority to make employment decisions to the Board of Supervisors under the facts of this case. Thus, this is the specific issue we address.

## IV. Delegation of Authority.

◼ As a general rule, a municipal corporation "cannot surrender, by contract or otherwise, any of its legislative and governmental functions and powers, including a partial surrender" unless authorized by statute. 2A Eugene McQuillin,

---

**2.** We recognize that a government subdivision may not delegate a power that it never possessed. *Barnes v. Dep't of Hous. & Urban Dev.,* 341 N.W.2d 766, 768 (Iowa 1983). Furthermore, we do not consider the role of the Board of Supervisors over budget matters on the competing authority of the Board of

Health to "employ persons" to discharge its duties. *See* Iowa Code § 331.433 (1999) (a county board must submit its estimated budget to the county auditor for inclusion in final county budget); § 331.434(6) (board of supervisors approves department budgets).

*Municipal Corporations* § 10.38, at 425 (3d ed. rev.1996) (footnotes omitted); *see also id.* § 10.39. This is a fundamental principle of government and rests upon sound policies that have "never been seriously questioned." *Id.* § 10.38. Thus, a governmental subdivision cannot delegate the right to make decisions it has been empowered to make. *See Gabrilson v. Flynn,* 554 N.W.2d 267, 276 (Iowa 1996) (public boards generally cannot delegate discretionary power conferred by law). It can, however, delegate its right to perform certain acts and duties necessary to transact and carry out its powers. *See Town of Plainfield v. Town of Avon,* 757 N.E.2d 705, 711–12 (Ind.Ct.App.2001); *Cent. Power & Light Co. v. City of San Juan,* 962 S.W.2d 602, 613 (Tex.App.1998). These delegable acts typically involve functions that require little judgment or discretion. *See Bunger v. Iowa High Sch. Athletic Ass'n,* 197 N.W.2d 555, 559–60 (Iowa 1972) (public board may delegate ministerial or administrative functions).

The legislature has given the board of health the specific power to "employ persons as necessary for the efficient discharge of its duties." Iowa Code § 137.6(4). As a specific enumerated power, it generally would not be subject to delegation absent a legislative declaration. Moreover, the power to employ includes the power not to employ. Consequently, under our statutory scheme, the power to hire and fire public health employees is given to the board of health, and the question is whether there is authority granted by our legislature to delegate that right to another entity. *See Lazuk v. Sch. Dist. No. 1, City & County of Denver,* 22 P.3d 548, 552 (Colo.Ct.App.2000) (power to employ and discharge teachers is vested with the school board and not subject to delegation).

The Board of Supervisors argues that section 137.7(2) and chapter 28E permit the Board of Health to delegate its authority. Section 137.7(2) permits the Board of Health to engage in joint operations with public and private agencies and to enter into contracts "for public health activities or projects." Iowa Code § 137.7(2). Similarly, chapter 28E allows the joint exercise of power by state and local governments. *See Barnes v. Dep't of Hous. & Urban Dev.,* 341 N.W.2d 766, 768 (Iowa 1983). Chapter 28E, however, requires the parties to enter into an agreement containing specific provisions, and that the agreement be properly filed and recorded. *See* Iowa Code §§ 28E.5–.8. Section 137.7(2) does not impose similar specific contractual requirements. Instead, it generally permits the board of health to engage in joint operations and contracts with others for public health services. Yet, assuming the Board of Health could delegate its employment authority, there is no evidence in the record to support a finding that the authority was actually delegated.

The employment manual constitutes an agreement by the Board of Health to follow the county employment policies and procedures. However, the parties have not identified any specific provision within the manual that would constitute a specific delegation of the decision-making authority to terminate a public health employee. Instead, the record only reveals the Board of Health agreed to follow certain procedures and guidelines in exercising its power. There is no specific authority given to the Board of Supervisors in the county employment manual to make the decision to terminate public health employees. *See Tabor v. Joint Bd. for Enrollment of Actuaries,* 566 F.2d 705, 708 n. 5 (D.C.Cir.1977) (certification board did not delegate its authority by merely "[p]ermitting association members to short-cut the regular certification process").

Similarly, the pay plan constitutes an agreement by the Board of Health to fol-

low the county wage procedures as administered by a compensation committee. However, as with the employment manual, there is no provision specifically delegating authority from the Board of Health to the Board of Supervisors to actually approve the step increases that public health employees are eligible to receive each year under the pay plan. The Board of Supervisors asserts that the raises approved by the Board of Health for Miller in this case violated the wage agreement, yet that argument does not address the issue of delegation. The Board of Health may have delegated its authority to set salaries independent of the county pay plan, but there is no indication it delegated specific authority to the Board of Supervisors to approve increases in the wages of public health employees within the provisions of the county pay plan.

■ It is important to recognize that the exercise of governmental powers under a claim of delegation is insufficient to prove the delegation itself. *See Kohler v. Benckart*, 252 S.W.2d 854, 857–58 (Ky.Ct. App.1952); *see also* McQuillin § 10.39. The delegation must be separately established. The summary judgment record in this case showing the Board of Health participated in the county employment procedures, without more, did not establish a delegation of the specific authority attempted to be exercised by the Board of Supervisors.

■ Moreover, there was no additional evidence presented in the course of the summary judgment proceedings in this case to support any delegation of authority. Governmental functions are not normally subject to delegation by mere acquiescence or default. *See Wilhelm v. Cedar County*, 50 Iowa 254, 256 (1878). Delega-

tion of important governmental authority requires a "careful and purposeful consideration by those" empowered to perform the functions. *See Greene v. McElroy*, 360 U.S. 474, 507, 79 S.Ct. 1400, 1419, 3 L.Ed.2d 1377, 1397 (1959). Even though there was evidence to infer the Board of Health deferred some of its employment decisions to the Board of Supervisors in the past, there is no evidence of a board resolution or other specific transfer of power. We believe such formal action, or other evidence of a clear understanding by the Board of Health, would be essential to the delegation of a power entrusted by the legislature.

■ Finally, it is important to recognize that once an agency properly delegates its authority, the authority delegated binds the agency, which can only exercise the authority that has been retained. *See GTE Int'l Inc. v. Hunter*, 649 F.Supp. 139, 147 (D.P.R.1986). In this case, the Board of Health has delegated some authority by agreeing to follow certain employment procedures, but is permitted to exercise authority it did not delegate. Of course, an agency is free to revoke or change a delegation of power, but this must be done by the same type of procedures that created the delegation. *See id.*

## V. Conclusion.

We reverse the decision of the district court and remand for further proceedings. The claim of delegation of authority does not support summary adjudication.

**REVERSED AND REMANDED.**