DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**CITY OF HOLLYWOOD,** a political subdivision of
the **STATE OF FLORIDA,**
Appellant,

v.

**ERIC AREM,**
Appellee.

No. 4D12-1312

[October 15, 2014]

Appeal from the County Court for the Seventeenth Judicial Circuit, Broward County; Terri-Ann Miller, Judge; L.T. Case No. 11-68287T140A.

Edward G. Guedes and Samuel I. Zeskind of Weiss Serota Helfman Pastoriza Cole & Boniske, P.L., Coral Gables, and Jeffrey P. Sheffel, City Attorney, Hollywood, for appellant.

Jason T. Forman of Jason T. Forman, P.A., Fort Lauderdale, for appellee.

**ON MOTION FOR REHEARING**

KLINGENSMITH, J.

We grant the motion for rehearing, deny rehearing en banc and certification to the Florida Supreme Court, withdraw our previously issued opinion, and substitute the following opinion in its place.

The City of Hollywood (the "City") appeals an order granting Defendant Eric Arem's motion to dismiss a red light camera prosecution against him. The county court certified the following questions of great public importance pursuant to section 34.017, Florida Statutes (2011), and Florida Rule of Appellate Procedure 9.160(d):

> 1. Does Florida Statute 316.0083(1)(a) authorize a municipality to delegate and have a private vendor actually issue Florida Uniform Traffic Citations, when notices of

violation, (also issued by the vendor), are not complied with, where the only involvement of the traffic infraction enforcement officer in the entire process is to push a button saying "Accept" after having viewed the image of an alleged violation electronically transmitted by the vendor?

2. Does Florida Statute 316.650(3)(c) permit a traffic infraction enforcement officer to delegate to a non-governmental entity, such as a private vendor of a municipality, his or her statutory duty to electronically transmit a replica of traffic citation data to a court having jurisdiction over the alleged offense or its traffic violations bureau?

3. And if the answer is in the negative to either question, is dismissal the appropriate remedy?

We accept discretionary review pursuant to Florida Rules of Appellate Procedure 9.030(b)(4)(A) and 9.160.

For the reasons set forth herein, we answer "No" to the first certified question, and find that the City is not authorized to delegate police power by entering into a contract that allows a private vendor to screen data and decide whether a violation has occurred before sending that data to a traffic infraction enforcement officer ("TIEO") to use as the basis for authorizing a citation. Such outsourcing to a third-party for-profit vendor of a city's statutorily mandated obligation to issue uniform traffic citations for red light camera violations is contrary to the plain wording of the Florida Statutes.

Inasmuch as we have answered the first question in the negative, we answer "Yes" to the third certified question, and find that dismissal of the citation is the appropriate remedy where a private third party effectively decides whether a traffic violation has occurred and a citation should be issued. We decline to answer the second question posed by the county court because the City's improper delegation of authority in this case renders the citation void at its inception.

*Factual and Procedural Background*

Section 316.0083, Florida Statutes, known as the Mark Wandall Traffic Safety Program (the "Act"), authorizes local governments to use red light cameras to enforce violations of sections 316.074(1) and 316.075(1)(c)1; both of which prohibit the running of red lights. *See* Ch. 2013-160, § 5,

Laws of Fla.; § 316.008(8)(a), Fla. Stat. (2011). The Act specifically authorizes the use of TIEOs to enforce red light violations. § 316.0083(1), Fla. Stat. (2011). The City operates a red light camera enforcement program pursuant to these statutes. As allowed by law, the City's program produces uniform traffic citations by electronic means. § 316.650(1)(c), Fla. Stat. (2011).

To assist the City in implementing its red light camera enforcement program, the City entered into a contract with American Traffic Solutions, Inc. ("ATS"), a private for-profit vendor, located in Arizona. Pursuant to that contract, ATS provides the City with, among other things, cameras and a computerized system to review recorded images of red-light violations to determine the occurrence of potential violations. If ATS forwards an image to the City, the TIEO authorizes enforcement by clicking a digital "Accept" button. The ATS computer program then handles the printing and mailing of the notice of violation to the automobile's registered owner. If the cited car owner fails to elect an option that avoids the issuance of a traffic citation, ATS then generates the resulting citation, and inserts a computer generated signature of the TIEO along with the TIEO's badge number. ATS sends the original citation by certified mail to the registered owner, and electronically transmits a replica of the citation data to the county court clerk. After clicking "Accept," the TIEO never actually sees the citation, nor is the TIEO otherwise involved in its issuance.

In this case, the City's red light camera system observed a car registered to Defendant failing to comply with a red light signal. After the information was forwarded to the City by ATS, the TIEO, acting as the City's agent, pressed the "Accept" button and initiated the aforementioned process. ATS sent out the notice of violation to the Defendant, who did not respond. In accordance with the standard procedure, ATS generated a uniform traffic citation after noting Defendant's failure to respond, sent it to him by certified mail, and electronically transmitted a replica of the citation data to the county court clerk.

Upon receiving the citation, Defendant denied the violation and requested a trial. After hearing testimony from the TIEO at trial, the county court found that the City's red light enforcement program did not comply with Florida Statutes by improperly delegating various tasks to ATS, and dismissed the citation. In its written order, the trial court determined *inter alia* that the Florida Statutes required that the citation be issued by the TIEO and not a third-party vendor, finding that the TIEO:

> **[W]as merely hitting the "accept" button to begin the process of generating a Notice of Violation (NOV) once she**

**had viewed the video of the alleged infraction and determined that a violation had taken place.** Those NOVs that were not paid within thirty (30) days eventually turned into Uniform Traffic Citations (UTC), issued directly by American Traffic Solutions (ATS), a vendor for the City of Hollywood. The testimony also showed that although the CSO believed that ATS was communicating with the Clerk of Court once the UTC was issued, the CSO had no personal knowledge of the communication, what information was sent to the Clerk, and when it was done. . . .

. . . .

The procedure employed by the City of Hollywood in this case is also actually contrary to Florida Statute 316.0083 (1)(a) which provides in pertinent part:

. . . This paragraph does not prohibit a _review_ (emphasis supplied) of information from a traffic infraction detector by an authorized employee or agent of the department, a county or a municipality before _issuance_ (emphasis supplied) of the traffic citation _by the traffic infraction enforcement officer_. (Emphasis supplied).

**What appears to have occurred in this case is that the traffic infraction enforcement officer (CSO) reviewed the information from the traffic infraction detector, and the [uniform traffic citation] was issued by a vendor, ATS, the agent for the City of Hollywood**.

(Emphasis added). This appeal followed.

*Analysis*

The interpretation of a statute in Florida is a legal matter and subject to review *de novo*. *Kasischke v. State*, 991 So. 2d 803, 807 (Fla. 2008). Courts strive to construe statutes to effectuate the Legislature's intent. *See, e.g.*, *id.* at 807 ("When construing a statute, we strive to effectuate the Legislature's intent."). To determine the intent, this court must first look to the statute's plain language. *Id.* "Florida case law contains a plethora of rules and extrinsic aids to guide courts in their efforts to discern legislative intent from ambiguously worded statutes." *Holly v. Auld*, 450 So. 2d 217, 219 (Fla. 1984). However, "[w]hen the statute is clear and unambiguous, courts will not look behind the statute's plain language for

legislative intent or resort to rules of statutory construction to ascertain intent." *Borden v. East–European Ins. Co.,* 921 So. 2d 587, 595 (Fla. 2006) (quoting *Daniels v. Fla. Dep't of Health,* 898 So. 2d 61, 64 (Fla. 2005)).

As a result of concerns about interference by municipalities in enacting and enforcing state traffic laws, the legislature adopted two sections which expressly limit the power of a municipality to legislate over traffic matters — sections 316.002 and 316.007, Florida Statutes — so as "to create a uniform, statewide traffic control system." *State v. Smith,* 584 So. 2d 145, 147 (Fla. 2d DCA 1991). From that, chapter 316 was titled as the "Florida *Uniform* Traffic Control Law." § 316.001, Fla. Stat. (2013) (italics added). The legislature created chapter 316 to address two abuses arising from the municipal court system of handling traffic infractions — the "history of inconsistency of penalties imposed" by the municipal courts and the inconsistency of traffic laws in municipalities across the state. *Miller v. City of Indian Harbour Beach,* 453 So. 2d 107, 111-12 (Fla. 5th DCA 1984).[1]

First, in section 316.002 the legislature identified the purpose of chapter 316 as being "to make uniform traffic laws to apply throughout the state . . . and uniform traffic ordinances to apply in all municipalities." *See Maddox v. State,* 923 So. 2d 442, 446 (Fla. 2006) (indicating that the

---

[1] In the preamble to chapter 71-135, Laws of Florida, the legislature identified these problems with the municipal court system that chapter 316 was designed to address:

> 1. "the movement of traffic in about 50 percent of the 394 incorporated municipalities of this state is controlled by chapter 186, Florida Statutes, which contains 195 sections," while "the traffic in the remaining incorporated municipalities . . . is controlled by a hodgepodge of ordinances which vary as to language and penalty";
> 2. many "parts of our state and city traffic laws are nonuniform and inconsistent";
> 3. "from the stand point of the public, observance of traffic rules is largely conditioned on the clarity, reasonableness and uniformity of the regulations," and
> 4. "nonuniform laws and ordinances are a source of inconvenience and hazard to the motorist and pedestrian alike, and contribute to accidents, traffic snarls, and congestion, increase the administrative and enforcement burdens of governmental agencies, and raise serious barriers to interstate and intrastate travel and commerce."

Ch. 71-135, Laws of Fla.

"stated purpose" of chapter 316 is "outlined" in section 316.002).  Section 316.002 expressly limits the power of municipalities to legislate over traffic matters, as follows:  "Section 316.008 enumerates the area within which municipalities may control certain traffic movement or parking in their respective jurisdictions." *Id.*  The powers of a municipality to legislate on traffic matters are thus limited to those enumerated in section 316.008. Finally, section 316.002 makes it "unlawful for any local authority to pass or to attempt to enforce any ordinance in conflict with the provisions of this chapter." *Id.*

Consistent with section 316.002, section 316.007, like a constitutional provision over traffic matters, declares the principle of uniformity and the supremacy of chapter 316:  "The provisions of this chapter shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein, and *no local authority shall enact or enforce any ordinance on a matter covered by this chapter unless expressly authorized.*"  § 316.007, Fla. Stat. (2013) (italics supplied).  The section 316.007 prohibition is even broader than that of 316.002; while section 316.002 precludes ordinances that "conflict" with chapter 316, section 316.007 bars ordinances "*on a matter covered* by [chapter 316] unless expressly authorized."  *Id.* (italics supplied).

As the supreme court recognized in *Masone v. City of Aventura*, 39 Fla. L. Weekly S406 (Fla. June 12, 2014), the history of Florida traffic law supports the conclusion that these statutes should be strictly construed to effectuate their purpose, and any attempt by a local government to circumvent chapter 316 either by ordinance or contract is invalid unless expressly authorized by the legislature.

Whether the City has the authority to outsource the issuance of these citations, or to outsource any other statutory duty, must therefore be derived from the plain wording of the statutes.  Here, the applicable statutes are clear and unambiguous.  Section 316.0083(1)(a) provides, in pertinent part:

> A notice of violation and a traffic citation may not be issued for failure to stop at a red light if the driver is making a right-hand turn in a careful and prudent manner at an intersection where right-hand turns are permissible.  This paragraph does not prohibit a review of information from a traffic infraction detector by an authorized employee or agent of the department, a county, or a municipality *before issuance of the traffic citation by the traffic infraction enforcement officer.*

§ 316.0083(1)(a), Fla. Stat. (2011) (emphasis added). Section 316.650 (3)(c) also provides:

> If a traffic citation is issued under s. 316.0083, *the traffic infraction enforcement officer shall provide by electronic transmission a replica of the traffic citation data to the court having jurisdiction over the alleged offense* or its traffic violations bureau within 5 days after the date of issuance of the traffic citation to the violator.

§ 316.650(3)(c), Fla. Stat. (2011) (emphasis added).

In Florida, only law enforcement officers and traffic enforcement officers have the legal authority to issue citations for traffic infractions, which means only law enforcement officers and traffic enforcement officers are entitled to determine who gets prosecuted for a red light violation. *See* § 316.0083(3); *see also* § 316.640, Fla. Stat. (2011). By statute, a traffic enforcement officer in a municipality must: (1) be an employee of the sheriff's or police department; (2) successfully complete the program as described in the statute; and (3) be physically located in the county of the sheriff's or police department. § 316.640(5)(a).

Section 316.640(5)(a) permits employees of a sheriff's department or police department of a municipality, without conveying arrest powers, to become TIEOs empowered to issue traffic citations under section 316.0083. *However, the statute does not authorize a private vendor to issue citations, either expressly or impliedly.* Although the legislature in section 316.0083(1)(a) did permit cities to delegate the *review* of information obtained from a traffic infraction detector, it did not permit cities to delegate their authority to *issue* any resulting traffic citations anywhere in these statutes. Had the legislature intended to allow for delegation of this authority or responsibility, just as it expressly allowed for delegating the review of traffic infraction detector information by employees or agents under section 316.0083(1)(a), it could have easily done so. Under the clear wording of the statute as enacted, it did not.

The trial court made various findings of fact about the process in concluding that the City unlawfully outsourced its statutory responsibilities to a private third-party vendor. The court found that according to the City's standard protocol and in accord with the terms of its contract, ATS first reviews the video-captured images, yet ATS does not furnish them all to the City – *only those it deems to be suggestive of a violation.* Exhibit D to the contract between the City and ATS, entitled "Infraction Processing," contains the following paragraph:

3. *The Vendor [ATS] shall make the initial determination* that the image meets the requirements of the Ordinance and this Agreement, and is otherwise sufficient to enable the City to meet its burden of Demonstrat[ing] a violation of the Ordinance. *If the Vendor determines that the standards are not met, the image shall not be processed any further.*

(Emphasis added). Therefore, the contract requires ATS to send images and information regarding the violation to the TIEO *only* if ATS determines in its sole discretion that certain standards have been met, and ATS may withhold sending information if it determines that those standards were not met.[2] Only in the event that ATS determines that a violation has taken place is that information sent to the City. After the information is received by the City, the information is then given to the TIEO who clicks the "Accept" button on a computer that authorizes the Arizona vendor to initiate and complete the process.

For all practical purposes, it is the *vendor* that decides which cases the TIEO gets to review; it is the *vendor* who initially determines who is subject to prosecution for a red light violation; it is the *vendor* that obtains the information necessary for the completion of the citation; it is the *vendor* that creates the actual citation; it is the *vendor* that issues the citation to the registered owner of the vehicle; and, it is the *vendor* that eventually transmits the traffic citation data to the court. As the trial court found, the TIEO, merely acquiesces in the vendor's decision to issue the citation. The TIEO never sees the actual citation, nor does the TIEO personally sign the citation before it is issued by the vendor to the alleged violator. Although the City may have some input into who eventually is prosecuted, that decision is wholly dependent upon the vendor's initial determination. Under these circumstances, it cannot be said that this is the legal equivalent of a TIEO issuing the citation, especially when it is the third-party vendor that controls what information is, or is not, made available for the officer's consideration.

In sum, Florida law does not grant the City any authority to delegate to a private third-party vendor the ability to issue uniform traffic citations. Only the City's law enforcement officers and TIEOs have the authority to issue such citations. The City also lacks the lawful authority to outsource to a third-party vendor the ability to make the initial review of the computer images of purported violations and then use its unfettered

---

[2] If the vendor unilaterally determines in its own discretion that either a violation did not occur or that the City would not be able to sustain its burden of proof if challenged in court, this information is never transmitted to the City.

discretion to decide which images are sent to the TIEO, and which ones are not. The City improperly delegated its police powers when it contractually outsourced its statutory obligations to a for-profit, non-governmental corporation. *See Cnty. of Volusia v. City of Deltona*, 925 So. 2d 340, 345 (Fla. 5th DCA 2006).

The process set forth in the contract between the City and ATS does not comply with Florida Statutes; therefore, the TIEO did not have authority to issue the citation in this case. As a result, the dismissal of the citation is the proper remedy.

*Affirmed.*

TAYLOR and CONNER, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***