WELLS, Judge,
specially concurring.
I agree with the majority that the first of the three certified questions must be answered in the affirmative and the remaining two questions must be answered in the negative. I do so for the following reasons.
First, section 316.0083 of the Florida Statutes authorizes, and provides basic procedures for local governments to utilize automated devices, that is, computer operated cameras, to enforce laws regulating conduct at traffic lights. See § 316.0083, Fla. Stat. (2010) (authorizing use of cameras to enforce traffic light violations; providing for notice of violations to be sent to vehicle owners; providing for exemptions from liability; providing for challenges to purported violations at an administrative hearing; and providing for appeals from adverse administrative hearing determinations). As pertinent here, this law expressly authorizes law enforcement agencies responsible for enforcing traffic laws to utilize agents to screen images secured by automated devices before issuance of a traffic violation citation by a traffic infraction enforcement officer;
For purposes of administering this section, the department, a county, or a municipality may authorize a traffic infraction enforcement officer under s. 316.640 to issue a traffic citation for a violation of s. 316.074(1) or 316.075(l)(e)l.... This paragraph does not prohibit a review of information from a traffic infraction detector by an authorized employee or agent of the department, a county, or a municipality before issuance of the traffic citation by the traffic infraction enforcement officer.
§ 316.0083(l)(a), Fla. Stat. (2015).[4]
In keeping with this provision, in 2010, Aventura amended its contract with American Traffic Solutions, Inc., the agent selected to operate Aventura’s computerized red-light camera system. That contract as amended accorded American the limited authority to screen images of vehicles taken at designated intersections in the city:
[American] shall act as City’s agent for the limited purpose of making an initial determination of whether the recorded images should be forwarded to an authorized [City] employee to determine whether an infraction has occurred and shall not forward for processing those recorded images that clearly fail to establish the occurrence of an infraction.
In conjunction with this agreement, Aven-tura adopted a number of guidelines pursuant to which American was to screen *173 images as authorized by the Aventu-ra/American contract.
With regard to the screening of images that might show a vehicle running a red light for example, the guidelines promulgated by Aventura generally require American to screen images of vehicles at electronically monitored intersections by examining images of vehicles’ tires in relationship to lines demarking an intersection. Specifically, under Aventura’s guidelines, American screeners are to examine still images taken after a traffic light has turned red (“shot A”) which depict the position of a vehicle’s front tires. If that image shows a vehicle’s front tires either on or slightly over the line demarking an intersection, a video clip of the same vehicle is examined to confirm that the front tires were either on or slightly over the demarcation line when the light turned red. If so, American is not to pass on the images to a traffic infraction enforcement officer as there is no photographic support for the conclusion an infraction has occurred. However, if video clip shows that the tires were behind the line when the light turned red, the images are to be passed on to a traffic infraction enforcement officer to determine whether a traffic infraction had occurred.[5]
In my opinion, this constitutes no more than the “screening” expressly authorized by the law. That is especially so here because the testimony was that Aventura’s traffic infraction enforcement officers do not simply rubber stamp recommendations or determinations made by American. To the contrary, the record is that Aventura’s traffic infraction enforcement officers historically have determined that only sixty-five percent of the images forwarded by American evidence an infraction warranting issuance of a traffic citation. For this reason alone, I reject the notion advanced by our sister court in City of Hollywood v. Arem, 154 So.3d 359 (Fla. 4th DCA 2014), that by allowing a servicing agent to forward pre-screened images to a traffic infraction enforcement officer that the servicing agent “[flor all practical purposes” determines who is subject to prosecution for a red light violation.
The record in this case establishes that at most the servicing agent has been accorded only the ministerial authority to screen and cull those images which, pursuant to a rigid set of guidelines, clearly show no possible violation of the traffic laws; it is the traffic infraction officer alone who determines from the population of possible violators, those who will be subject to prosecution. This, in my opinion, is neither a violation of the law nor a matter about which those cited for a violation have authority to complain. Put another way, the real issue here is that some individuals who may have violated traffic regulations may be screened out of the process because the images of their vehicles were not sent to a traffic infraction enforcement officer to determine if a violation has occurred. This argument is no different than that made by an individual issued a speeding ticket who complains that other speeders also were not ticketed. In short, the fact that American determines certain images will not be forwarded—i.e., that some drivers will not be ticketed—’because images taken of their vehicles show that they have not exceeded set guidelines, does not amount to determining whether those drivers who potentially exceed those guidelines have violat *174 ed the law. That determination, as the record before us confirms, is left solely to traffic infraction enforcement officers. I therefore agree with the majority that the answer to the first certified question is “yes.”
I also agree with the majority that in today’s computerized world, the answers to the second and third certified questions as to whether it is illegal for American to print and mail a citation issued by a traffic infraction enforcement officer, clearly is “no.” Pursuant to Aventura’s guidelines, after a traffic infraction enforcement officer receives images from American, the officer independently reviews the images to determine whether an infraction has occurred. If the officer determines that the image depicts an infraction, the officer electronically indicates that he or she accepts that an infraction has occurred and electronically issues the notice of infraction by authorizing American to send a notice of violation bearing the officer’s badge number and signature. American then uses a form approved by the State of Florida. The clerk of the court is also notified electronically by American or one of its subsidiaries or vendors. As the testimony adduced below confirms, this is little different from what happens when an officer issues a violation roadside:
Q. So can you explain how that information is sent electronically, if you know?
A. It is sent electronically to [the clerk’s office],
Q. Is that any different than any other electronic citation information that might be sent from roadside?
A. In the instance when it is sent from my computer roadside, it would go through my station’s server and then to Miami-Dade Clerk of Courts.
In the instance of these violations they—this officer approves them, the server—[American’s] server in Arizona provides that information to the Miami-Dade Clerk of Courts.
In my opinion, to conclude that such ministerial acts are unauthorized by section 316.0083 would be akin to determining that a trial judge has no authority to instruct a judicial assistant to prepare a computerized order which the judge electronically signs and issues electronically to the parties and the clerk’s office. Needless to say, this court determines and electronically transmits many matters each day. It is the judges who decide the cases and issue their opinions, however it is the clerk’s office which electronically sends those decisions on to the appropriate parties.
I also find no violation of section 316.0083 when American electronically “issues” a uniform traffic citation (as expressly authorized by Aventura with automatic notification to the court) when the owner of a vehicle fails to respond to a traffic citation as required by law. See § 316.0083(l)(b)l.a., Fla. Stat. (2015) (providing that “to avoid the issuance of a traffic citation,” a vehicle owner notified of a violation must either pay a penalty, submit an affidavit, or request a hearing within 60 days of notification as provided in section 316.0083). Again, and at best, this is a non-discretionary function which takes no more than a computer program to perform.
In conclusion, because I agree that the first certified question as to whether section 316.0083 allows a municipality vendor to segregate images for forwarding to traffic infraction enforcement officers should be answered in the affirmative, and because I agree that the second and third certified questions about utilizing automated processes should be answered in the negative, I agree that the order entered below must be reversed. I would not, *175 however, certify this matter to the Florida Supreme Court as a matter of exceptional importance as I do not believe this matter is of such import as to warrant further review, but would certify this decision as being in express and direct conflict with Arem.

. See also § 316.074(1), Fla. Stat (2105) (requiring drivers to obey the instructions of any official traffic control device unless directed otherwise by a police officer); § 316.075(1), Fla. Stat. (2015) (requiring drivers generally to obey traffic control devices "exhibiting different colored lights”); § 316.640(3), Fla. Stat. (2015) (providing for traffic laws to be enforced In municipalities by local police and sheriff's department officers); § 316.640(5)(a), Fla. Stat. (2015) (expressly authorizing municipal law enforcement agencies to employ "any individual who successfully completes instruction in traffic enforcement procedures and court presentation” to issue citations for traffic law infractions).

. This is but one example of the guidelines adopted by Aventura to address screening procedures with regard to a number of other potential traffic violations. By way of example only, Aventura has adopted guidelines for screening images of long vehicles and vehicles towing trailers and for screening images of vehicles making right turns on red.