[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13721
_____

D.C. Docket No. 1:14-cv-24010-FAM

CHRISTOPHER L. PARKER,
MARWA MOUSSA, individually and
on behalf of others similarly situated,
EDUARDO ZEITUNE,
ANGEL LUIS LAZO-PEREZ,
ERIK BARTENHAGEN, et al.,

                                        Plaintiffs–Appellees,

versus

AMERICAN TRAFFIC SOLUTIONS, INC., et al.,

                                        Defendants,

CITY OF APOPKA,
CITY OF AVENTURA,
VILLAGE OF BAL HARBOUR,
CITY OF BOCA RATON,
CITY OF BOYNTON BEACH,
CITY OF BROOKSVILLE,
TOWN OF CAMPBELLTON,

CITY OF CLERMONT,
CITY OF CLEWISTON,
CITY OF COCOA BEACH,
CITY OF CORAL GABLES,
CITY OF CORAL SPRINGS,
TOWN OF CUTLER BAY,
TOWN OF DAVIE,
CITY OF DAYTONA BEACH,
CITY OF DORAL,
VILLAGE OF EL PORTAL,
CITY OF FLORIDA CITY,
CITY OF FORT LAUDERDALE,
CITY OF GREEN COVE SPRINGS,
CITY OF GROVELAND,
CITY OF GULFPORT,
CITY OF HAINES CITY,
CITY OF HALLANDALE BEACH,
CITY OF HIALEAH,
CITY OF HIALEAH GARDENS,
HILLSBOROUGH COUNTY,
CITY OF HOLLYWOOD,
CITY OF HOLLY HILL,
CITY OF HOMESTEAD,
TOWN OF JUNO BEACH,
CITY OF KENNETH CITY,
TOWN OF KEY BISCANE,
CITY OF LAKELAND,
CITY OF LAUDERDALE LAKES,
CITY OF MAITLAND,
MANATEE COUNTY,
CITY OF MARGATE,
TOWN OF MEDLEY,
CITY OF MIAMI,
CITY OFMIAMI BEACH,
CITY OF MIAMI GARDENS,
CITY OF MIAMI SPRINGS,
CITY OF MILTON,
CITY OF NEW PORT RICHEY,
CITY OF NORTH BAY VILLAGE,
CITY OF NORTH MIAMI,

CITY OF NORTH MIAMI BEACH,
CITY OF OCOEE,
CITY OF OLDSMAR,
CITY OF OPA-LOCKA,
ORANGE COUNTY,
TOWN OR ORANGE PARK,
CITY OF ORLANDO,
OSCEOLA COUNTY,
CITY OF PALATKA,
PALM BEACH COUNTY,
CITY OF PALM COAST,
CITY OF PEMBROKE PINES,
VILLAGE OF PALM SPRINGS,
CITY OF PORT RICHEY,
CITY OF SARASOTA,
CITY OF SOUTH PASADENA,
CITY OF ST. PETERSBURG,
CITY OF SUNRISE,
TOWN OF SURFSIDE,
CITY OF SWEETWATER,
CITY OF TAMARAC,
CITY OF TEMPLE TERRACE,
CITY OF WEST MIAMI,
CITY OF WEST PALM BEACH,
CITY OF WEST PARK,

Defendants–Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 31, 2016)

Before WILSON and JULIE CARNES, Circuit Judges, and MOORE,[*] District Judge.

JULIE CARNES, Circuit Judge:

Plaintiffs sued various local government defendants ("Defendants"), claiming unjust enrichment and seeking disgorgement of traffic fines Plaintiffs allege were imposed in violation of Florida law.  Defendants moved to dismiss the claim, asserting sovereign immunity.  The district court denied Defendants' motion to dismiss, and Defendants now appeal.  After a careful review of the record and controlling Circuit precedent, and with the benefit of oral argument, we dismiss this interlocutory appeal for lack of jurisdiction.

## BACKGROUND

Plaintiffs filed this class action against red-light camera vendor American Traffic Solutions, Inc. ("ATS"), a company that contracts with Florida local governments to install and operate unmanned cameras designed to capture video images of traffic violations.  Plaintiffs alleged in the complaint that they were filmed committing a traffic violation on one of these cameras, and that they subsequently received a traffic citation and paid a fine.  According to Plaintiffs, the citations were void, and the fines were thus unlawful, because the red-light camera programs violated Florida law in several respects.

---

[*]  Honorable William T. Moore, United States District Judge for the Southern District of Georgia, sitting by designation.

Other plaintiffs subsequently filed similar actions in various state and federal courts in Florida, and all of the actions were consolidated with this case under the first-filed rule. Plaintiffs prepared an amended master complaint in the consolidated action, asserting claims against Defendants, the Florida Department of Revenue, and three red-light camera vendors, including ATS. The master complaint alleges that Defendants unlawfully issued citations and collected fines for traffic violations recorded by red-light cameras. Among other claims, it includes an unjust enrichment claim in which Plaintiffs seek disgorgement of the fines they paid to Defendants.

The fines that are the subject of the unjust enrichment claim were imposed pursuant to the Mark Wandall Traffic Safety Program (the "Wandall Act"), Florida Statutes § 316.0083. The Wandall Act authorizes the use of red-light cameras, and it creates a detailed procedure that must be followed by a local government when issuing citations and imposing fines under this program. *Id.* Pursuant to the Wandall Act, a Florida appellate court recently invalidated the red-light camera program operated by the City of Hollywood. *See City of Hollywood v. Arem*, 154 So. 3d 359, 361 (Fla. Dist. Ct. App. 2014). The court in *Arem* held that Hollywood's program violated the Wandall Act because it unlawfully delegated police power to a red-light camera vendor by allowing the vendor to (1) pre-screen and determine which camera shots to send to Hollywood's traffic enforcement

5

officer and (2) issue traffic citations with the mere acquiescence of the enforcement officer. *Id.* The court concluded that citations issued pursuant to Hollywood's red-light camera program were void and should be dismissed. *Id.* at 361, 365.

In support of their unjust enrichment claim, Plaintiffs allege that Defendants operated similarly unlawful red-light camera programs. Specifically, Plaintiffs contend that Defendants violated the Wandall Act by improperly delegating pre-screening authority to ATS and other red-light camera vendors. *See id.* at 365 (stating that, under Florida law, a local government "lacks the lawful authority to outsource to a third-party vendor the ability to make the initial review of the computer images of purported violations"). In addition, Plaintiffs assert that the citations they received were unlawfully issued by red-light camera vendors rather than by a Florida law or traffic enforcement officer. *See id.*

Defendants moved to dismiss the unjust enrichment claim on the ground of sovereign immunity. In support of their motion, Defendants argued that the unjust enrichment claim was a "quasi-contract" claim barred by sovereign immunity under Florida law. The district court denied the motion. It construed the unjust enrichment claim as a claim to recover an "unlawful monetary extraction" rather than as a quasi-contract claim. According to the district court, Florida sovereign immunity does not apply to an unlawful extraction claim.

6

Defendants filed an interlocutory appeal of the district court's denial of sovereign immunity.  Plaintiffs moved to dismiss the appeal for lack of jurisdiction and for a frivolity determination and sanctions pursuant to Federal Rule of Appellate Procedure 38.  The motion was carried with the case, and this Court heard oral argument on both the jurisdictional issue and the merits of the sovereign immunity claim.  For the reasons that follow, we now grant Plaintiffs' motion to dismiss the appeal for lack of jurisdiction, but deny their request for sanctions under Rule 38.

## DISCUSSION

### I.    Jurisdiction

Our jurisdiction is limited to appeals from "final decisions" of the district court.  28 U.S.C. § 1291.  An order denying a motion to dismiss does not result in a final decision.  Thus, we lack jurisdiction to review such an order unless it is "otherwise made appealable by statute or jurisprudential exception." *The Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1355 (11th Cir. 2014) (internal quotation marks omitted).  The only exception potentially applicable here arises under the collateral order doctrine. *See id.* (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S. Ct. 122 (1949)).  That doctrine permits the immediate appeal of an interlocutory order if it (1) conclusively determines an important issue that is

both (2) completely separate from the merits of the case and (3) effectively unreviewable on appeal from a final judgment. *Id.*

It is by now well-established that an order denying federal qualified immunity satisfies the above requirements. *See Schmelz v. Monroe Cty.*, 954 F.2d 1540, 1543 (11th Cir. 1992) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S. Ct. 2806, 2817 (1985)). Such an order conclusively determines whether a government official is entitled to immunity from suit in his individual capacity, an important issue that is separate from the merits of the case. *Mitchell*, 472 U.S. at 527–528, 105 S. Ct. at 2816. And as qualified immunity protects public officials from the burden of litigation, rather than just liability, its protection is irretrievably lost—in a ruling that is "effectively unreviewable on appeal from a final judgment"—when a claim to qualified immunity is denied in an interlocutory order. *Id.* at 525–27, 105 S. Ct. at 2814–16.

Similarly, an order denying state official or sovereign immunity is immediately appealable if state law defines the immunity at issue to provide immunity from suit rather than just a defense to liability. *See Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996) ("Alabama intended for its state officers to be immune from suit. As such, the denial of summary judgment based on sovereign immunity is properly before us on interlocutory appeal."); *Griesel v. Hamlin*, 963 F.2d 338, 341 (11th Cir. 1992) ("Because sovereign immunity under Georgia law

is an immunity from suit, . . . we have jurisdiction over the district court's order denying summary judgment based on sovereign immunity under Georgia law."). As with federal qualified immunity, the denial of state official or sovereign immunity conclusively resolves an important issue that is separate from the merits of the case. *See Griesel*, 963 F.2d at 340. If the state immunity is intended to shield a governmental entity or official from suit rather than just liability, its denial in an interlocutory order is also "effectively unreviewable after trial." *Id.*

This Court, however, has interpreted Florida sovereign immunity law to provide only a defense to liability, rather than immunity from suit. *CSX Transp., Inc. v. Kissimmee Util. Auth.*, 153 F.3d 1283, 1286 (11th Cir. 1998) (per curiam). Based on that interpretation, we held in *CSX* that an order denying Florida sovereign immunity is not immediately appealable under the collateral order doctrine. *Id. CSX* decided the jurisdictional issue presented by this case, and it is controlling as to that issue unless it has been "undermined to the point of abrogation" by an intervening change in Florida sovereign immunity law. *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008)[1]; *see also United States v. Clarke*, 822 F.3d 1213, 1215 (11th Cir. 2016) (noting that a prior panel decision interpreting state law is binding on the Court unless it has been abrogated by an

---

[1]  A prior panel decision also can be overruled or abrogated by a decision of the United States Supreme Court or this Court sitting en banc, *see Archer*, 531 F.3d at 1352, but Defendants acknowledge that there is no Supreme Court or circuit authority to suggest that *CSX* is no longer controlling.

intervening decision of the relevant state court). Contrary to Defendants' argument, there is no clear authority to suggest such a change has occurred in Florida law.

This Court's decision in *CSX* was based on the Florida Supreme Court's discussion of the scope of Florida sovereign immunity in *Department of Education v. Roe*, 679 So. 2d 756 (Fla. 1996). The question presented in *Roe* was whether the Florida Department of Education was entitled to interlocutory review of an order denying its claim to sovereign immunity in a negligence action. *Id.* at 757. The Florida Supreme Court held that it was not, *id.* at 759, but its holding was less important than its more general discussion of the nature of Florida sovereign immunity for purposes of the collateral order doctrine. *See CSX*, 153 F.3d at 1286 ("[J]ust because a state court, under its own jurisdictional laws and rules, does not have jurisdiction over a kind of interlocutory appeal, does not dictate a lack of jurisdiction in this court.").

In the course of its discussion, *Roe* distinguished between sovereign immunity asserted by a governmental entity like the Department of Education (and the local governments in this case) and federal qualified immunity asserted by a public official sued individually. *Roe*, 679 So. 2d at 759. Specifically, *Roe* noted that (1) "qualified immunity is rooted in the need to protect public officials from undue interference, whereas sovereign immunity is not" and (2) defending a suit is

not likely to have the same "chilling effect" on a governmental entity as it would on a public official sued individually. *Id.* Based on those differences, *Roe* indicated that Florida sovereign immunity, unlike federal qualified immunity, provides only a defense to liability rather than immunity from suit. *Id.* On that point, *Roe* stated: "although the state will have to bear the expense of continuing the litigation, the benefit of immunity from liability, should the state ultimately prevail on the sovereign immunity issue, will not be lost simply because review must wait until after final judgment." *Id.* That statement was central to this Court's decision in *CSX*. *CSX*, 153 F.3d at 1286.

The Florida Supreme Court has not overruled *Roe* or expressly altered its definition of the scope of Florida sovereign immunity. In fact, *Roe* has been cited favorably in several recent decisions that suggest its continuing validity. *See Fla. Fish and Wildlife Conservation Comm'n v. Jeffrey*, 178 So. 3d 460, 465 (Fla. Dist. Ct. App. 2015) (citing *Roe* for the proposition that Florida sovereign immunity does not immunize a governmental entity from suit); *Keck v. Eminisor*, 104 So. 3d 359, 365–66 (Fla. 2012) (per curiam) (distinguishing *Roe* in a case involving individual immunity under Fla. Stat. § 768.28). *Keck* is instructive. *Keck* held that individual immunity granted to government employees under Florida Statutes § 768.28(9)(a) provides immunity from suit, and that an order denying it is thus subject to interlocutory review. *Keck*, 104 So. 3d at 366. In so holding, *Keck*

11

relied on the plain language of § 768.28(9)(a), which states that a government employee cannot be "named as a defendant" in an action arising out of his employment unless he acted maliciously or in bad faith. *Id.* Thus, *Keck* did not overrule *Roe*, but rather distinguished it, emphasizing that *Roe* involved sovereign immunity asserted by a governmental entity, and thus it did not raise the qualified immunity-like considerations that underlie individual immunity and that warrant an immediate appeal in the event of denial of that immunity. *Id.* at 365–66.

Defendants argue that *Roe* should be interpreted narrowly, so that its definition of Florida sovereign immunity is only applicable to immunity from tort claims, which the state has partially waived by virtue of § 768.28, and not to immunity from other types of claims, such as the unjust enrichment claim at issue in this case. That argument is foreclosed by *CSX*, which interpreted *Roe* to stand for the broad proposition that "Florida's state sovereign immunity is only immunity from liability." *CSX*, 153 F.3d at 1286. Indeed, the governmental entity in *CSX* sought immunity from a contractual indemnification claim rather than a tort claim, yet this Court readily applied *Roe* to conclude that the denial of immunity was not immediately appealable under the collateral order doctrine. *Id.* at 1284, 1286. Accepting Defendants' proffered interpretation of *Roe* would thus require us to hold that *CSX* was wrongly decided, rather than that it has been abrogated. We are not authorized to make that holding. *See United States v. Steele*, 147 F.3d

12

1316, 1317–1318 (11th Cir. 1998) ("Under our prior precedent rule, a panel cannot overrule a prior one's holding even though convinced it is wrong.").

Defendants also contend that *Roe* was abrogated by the Florida Supreme Court's decision in *Wallace v. Dean*, 3 So. 3d 1035 (Fla. 2009). Their argument is undermined by the fact that *Wallace* predated *Keck* and *Jeffrey*, both of which reaffirmed *Roe*'s validity, and further weakened by the fact that *Wallace* did not discuss or even cite *Roe*. It is not surprising that *Wallace* failed to mention *Roe*. *Wallace* raised two issues: (1) whether a sheriff owed a duty of care to the plaintiff pursuant to the undertaker's doctrine and (2) assuming there was a duty, whether the sheriff was sovereignly immune from tort liability under a discretionary function analysis. *Id.* at 1043–44. Neither of those issues required a determination as to whether Florida sovereign immunity provides immunity from suit or only a defense to liability, or otherwise implicated *Roe*'s definition of the scope of sovereign immunity.

Because the lower court's decision conflated the duty and immunity issues, *Wallace* discussed at some length the distinction between a lack of duty—and thus a lack of liability—under tort law and the presence of sovereign immunity. *Id.* at 1040, 1044–45. During the course of its discussion, *Wallace* off-handedly referred to sovereign immunity as "immunity from suit" and as "bar[ring] an action." *Id.* at 1044–45. But we do not believe that reference was intended to signal disapproval

13

of *Roe*. Indeed, and consistent with *Roe*, *Wallace* also referred to sovereign immunity, in the same discussion, as a "shield[] . . . from tort liability." *Id.* at 1045. Thus, to the extent any conflict between *Wallace* and *Roe* can be implied, it is tenuous at best and clearly insufficient to undermine *CSX* "to the point of abrogation*.*" *Archer*, 531 F.3d at 1352; *see also United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009) ("In addition to being squarely on point, the doctrine of adherence to prior precedent also mandates that the intervening . . . case actually abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior panel.").

Finally, Defendants suggest that *CSX* is no longer controlling as a result of a recent amendment to the Florida Rules of Appellate Procedure. *See In re Amendments to Florida Rule of Appellate Procedure 9.130*, 151 So. 3d 1217 (Fla. 2014) (mem.). The amendment was made in response to *Keck*, discussed above, in which the Florida Supreme Court directed the Florida Bar Appellate Court Rules Committee to propose an amendment authorizing review of non-final orders denying individual immunity under § 768.28(9)(a). *Keck*, 104 So. 3d at 366, 369. The Rules Committee went beyond the directive of *Keck* and proposed an amendment authorizing the review of non-final orders denying any type of immunity. *See In re Amendments to Florida Rule of Appellate Procedure 9.130*, 151 So. 3d at 1217. As modified by the Florida Supreme Court, the amendment

14

that ultimately was adopted authorizes review of non-final orders denying individual or sovereign immunity under § 768.28(9), as well as orders denying sovereign immunity generally. *See* Fla. R. App. P. 9.130(a)(3)(C)(x)–(xi).

There could be any number of reasons why the Rules Committee amended Rule 9.130 to allow an immediate appeal, in a Florida appellate court, of an order denying Florida sovereign immunity. There is no basis for assuming the amendment reflects a change in Florida law as to the scope of sovereign immunity, and no authority to suggest that the amendment abrogated either *Roe* or *CSX*. Moreover, Florida's procedural rules do not govern whether an interlocutory order is immediately appealable in this Court. *See Griesel*, 963 F.2d at 340 (recognizing that "federal law determines the appealability" of an order denying state immunity). As we made clear in *CSX*, our jurisdiction to review an order denying state immunity does not depend on whether the order is appealable in the state courts; our jurisdiction depends instead on whether, based on the state's definition of the immunity, its denial satisfies the requirements of the collateral order doctrine.[2] *CSX*, 153 F.3d at 1286. *CSX* held that an order denying Florida

---

[2] For that reason, *Beach Community Bank v. City of Freeport*, 150 So. 3d 1111 (Fla. 2014), cited by Defendants, does not alter our analysis. In *Beach Community Bank*, the Florida Supreme Court assumed jurisdiction to review the trial court's non-final order denying the City's claim to sovereign immunity and the First District Court of Appeal's decision reversing the trial court. The Florida Court's decision to accept jurisdiction, however, was expressly based on the amendment to Rule 9.130 permitting immediate review of an order denying sovereign immunity. *See id.* at 1113 ("Because this case falls squarely within the new rule amendment, we determine that the City should be entitled to the benefit of the new rule."). But because *Beach Community*

sovereign immunity does not meet those requirements. *Id.* Because *CSX* is still controlling on that point of law, we lack jurisdiction over this appeal.

## II.   Frivolity

In their motion to dismiss, Plaintiffs request a frivolity determination under Federal Rule of Appellate Procedure 38. Rule 38 provides that: "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Fed. R. App. P. 38. Rule 38 sanctions are appropriately imposed against appellants who raise "clearly frivolous claims in the face of established law and clear facts." *Farese v. Scherer*, 342 F.3d 1223, 1232 (11th Cir. 2003) (internal quotation marks omitted). For purposes of Rule 38, a claim is clearly frivolous if it is "utterly devoid of merit." *Bonfiglio v. Nugent*, 986 F.2d 1391, 1393 (11th Cir. 1993).

Although we have concluded that we lack jurisdiction over this appeal, the jurisdictional argument raised by Defendants is not entirely meritless. The recent Florida procedural amendments authorizing immediate review of an order denying sovereign immunity in Florida courts, and some of the language in *Wallace*, raise at least a colorable argument that *CSX* no longer precludes us from exercising

---

*Bank* merely applies the above newly-amended rule, and does not purport to re-define the nature or scope of Florida sovereign immunity, it adds little to the analysis required of us under the collateral order doctrine.

jurisdiction over the appeal.  Even though we were not ultimately persuaded by that argument, we do not find it to be frivolous.  Accordingly, we deny Plaintiffs' request for sanctions under Rule 38.

## CONCLUSION

For the reasons discussed above, we grant Plaintiffs' motion to dismiss this appeal for lack of jurisdiction and deny their motion for a frivolity determination and sanctions under Rule 38.