MANSFIELD, Justice (concurring in part and dissenting in part).
I. Introduction.
I generally join the court's opinion except for part V.A (Preemption) and part VI (Unlawful Delegation).
In our original decision, I dissented as to part V.A, concurred as to result in part VI.A-G, and dissented as to part VI.H (Unlawful Delegation Challenge as a Result of Calibration). Because the court was equally divided on part VI.H, the district court's ruling on unlawful delegation as a result of calibration was affirmed by operation of law. Today's rehearing does not affect part VI.H.
In light of today's rehearing concerning preemption, I now specially concur in part V.A instead of dissenting.
II. The District Court's Ruling on Preemption Should Be Affirmed.
I begin with part V.A. The district court granted summary judgment to the defendants on the plaintiffs' claim of state law preemption, reasoning,
The ATE [Automated Traffic Enforcement] ordinance is not preempted because vehicle owners are merely offered an additional forum to challenge their ATE citations. Owners may still submit a form specified by the City to have a municipal infraction, as opposed to ATE citation, issued and filed with the court. Accordingly, the ATE ordinance's administrative hearing presents no conflict with the judicial process. For the same reason, the ATE ordinance does not conflict with Iowa Code section 364.22(6) and (4) because, by providing an additional channel to challenge a traffic fine, the ATE ordinance leaves untouched the process of contesting a municipal infraction through a court of law.
(Citations omitted.)
On appeal, the plaintiffs challenge this ruling head-on, arguing that every municipal infraction "must" be heard exclusively in small claims court. Appellants' Br. at 24 ("Using an administrative hearing process before a volunteer citizen with no legal training is not consistent with this language."); id . at 25-26 ("The Ordinance permits a type of administrative hearing that the statute prohibits (by requiring a hearing before a magistrate or district associate judge).").
This argument seems to me plainly wrong. Alternative dispute resolution mechanisms are ubiquitous these days. There is nothing improper when a municipality supplements state law by offering another, more efficient way for a vehicle owner to contest a traffic violation.
It is helpful to examine Rhoden v. City of Davenport , 757 N.W.2d 239 (Iowa 2008), in some detail. One of the specific preemption issues there was whether Davenport could make civil fines for ATE violations *580 "payable to the City at the City's finance department." Id . at 241. Iowa Code sections 364.22(6) and 602.8106 require fines for municipal infractions to be collected by the clerk of court, who then remits ninety percent to the city. Id. The plaintiffs argued that Davenport's ordinance was "inconsistent with this requirement." Id . We held there was no conflict between the Iowa Code sections and the Davenport ordinance, which "require[d] only that payments for unchallenged violations, which do not involve the court, be payable to the City's finance department." Id . We emphasized that section 364.22(6) provides only that "all civil penalties collected by the court be payable to the clerk of court and then remitted to the city." Id .
Thus, I read Rhoden as rejecting the plaintiffs' exclusivity argument. Municipalities can create other mechanisms for processing traffic violations, even when they may deprive the State of Iowa of revenue. Going through the court is not mandatory.
This analysis, I believe, is sufficient to dispose of the preemption argument the plaintiffs actually made, i.e., that the legislature has preempted all alternative dispute resolution mechanisms for ATE violations that do not involve the court. I do not join the majority's further discussion on the topic, including its gloss on Rhoden , which is not necessary to decide the present case.[15] Accordingly, I concur as to the result only.
III. There Was No Unlawful Delegation.
Turning to part VI.H, I do not believe it amounts to unlawful delegation if a municipality fails to calibrate an outside party's ATE equipment adequately. Lack of calibration may present other issues, but it doesn't amount to unlawful delegation.
In my view, a municipality can use third-party contractors to initially detect traffic violations, so long as a municipal official makes the ultimate call whether to issue a citation or not. See Hughes v. City of Cedar Rapids , 840 F.3d 987, 998 (8th Cir. 2016) ("[T]here is no improper delegation (or in statutory terms, conferral) of power upon Gatso."); Jimenez v. State , 246 So.3d 219, 231 (Fla. 2018) (Canady, J., concurring) ("[T]he critical issue is not the details of the relationship between the local government and the vendor. Rather, the dispositive point is that the local government conforms to the requirement that only law enforcement officers and traffic infraction enforcement officers-rather than employees of a vendor-may issue traffic citations.").
A municipality "cannot delegate the right to make decisions it has been empowered to make," but it can "delegate its right to perform certain acts and duties necessary to transact and carry out its powers." Warren Cty. Bd. of Health v. Warren Cty. Bd. of Supervisors , 654 N.W.2d 910, 914 (Iowa 2002). Put another way, so long as the municipality makes the final decision, it can outsource "certain acts and duties." Id.
Bunger v. Iowa High School Athletic Association, 197 N.W.2d 555 (Iowa 1972), illustrates this distinction. There the question was, "Can a school board re-delegate its rule-making power regarding pupils to some other organization?" Id. at 559. We said no. Id . at 560-63.
This is different. It is undisputed that Cedar Rapids set the criteria for when *581 Gatso should report a violation to it and then reviewed each citation before issuing it. Cedar Rapids did not delegate authority to issue a rule or to bring a civil or criminal charge; rather, the alleged delegation related only to detection of potential violations.
My colleagues cite an unlawful delegation case from the Florida Fourth District Court of Appeal pertaining to ATE enforcement. See City of Hollywood v. Arem , 154 So.3d 359 (Fla. Dist. Ct. App. 2014). However, that case is no longer good law. In Jimenez , the Florida Supreme Court specifically disapproved Arem while approving other Florida Court of Appeal decisions that ruled otherwise. 246 So.3d at 231 (majority opinion) ("Accordingly, we answer the rephrased certified question in the affirmative and approve the decision of the Third District in Jimenez . We also approve the decision of the Second District in Trinh and disapprove the decision of the Fourth District in Arem to the extent it is inconsistent with this opinion."). My colleagues discuss Jimenez at some length, without ever mentioning that it expressly disapproved Arem .[16]
My colleagues confuse an evidentiary issue with an unlawful delegation issue. If Cedar Rapids did not adequately calibrate the ATE equipment, that might be a reason not to allow a reading from that equipment to establish a violation. However, it doesn't present an unlawful delegation problem. Likewise, if the police decide to use an outside DNA testing lab for criminal investigation purposes or a K-9 to detect drugs, that may lead to some evidentiary issues that have to be resolved, but it isn't an improper delegation of governmental power.
I also wonder whether our decision in City of Des Moines v. Iowa Department of Transportation , 911 N.W.2d 431 (Iowa 2018), renders the entire calibration issue moot. In that we case, we found the department of transportation lacked the authority to promulgate its regulations regarding municipal ATE systems. Id . at 449-50. This would include the regulation requiring municipalities to calibrate ATE systems. Plaintiffs' argument concerning calibration is limited to a single paragraph of its brief and is predicated on the IDOT regulation. See Appellants' Br. at 32.
For the foregoing reasons, I concur in part and dissent in part.
Waterman, J., joins parts II and III of this concurrence in part and dissent in part.

As noted by the court, the plaintiffs raise two additional preemption arguments-one based on the now-invalidated Iowa Department of Transportation rules and the other based on the exclusion of government vehicles from the database. I agree that these arguments have no merit for the reasons set forth in the court's opinion.

My colleagues give more airplay to the intermediate appellate opinion in Jimenez (which they label Jimenez I ) than to the supreme court opinion.