[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11494
_____

D.C. Docket Nos. 0:08-md-01916-KAM; 0:08-cv-60821-KAM


IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.
ALIEN TORT STATUTE AND SHAREHOLDER
DERIVATIVE LITIGATION

_____

0:07-cv-60821-KAM

ANTONIO GONZALEZ CARRIZOSA,
JULIE ESTER DURANGO HIGITA,
LILIANA MARIA CARDONA,
MARIA PATRICIA RODRIGUEZ,
ANA FRANCISCA PALAC MORENO, et. Al.,

Plaintiffs-Appellants,

versus

CHIQUITA BRANDS INTERNATIONAL, INC.,
an Ohio corporation,
CHIQUITA FRESH NORTH AMERICA LLC,
a Delaware corporation,

Defendants-Appellees,

RODERICK HILLS, et. Al.,

Defendants.

_____

9:08-cv-80421-KAM

JOHN DOE I,
individually and as representative of his
deceased father JOHN DOE 2,
JANE DOE 1,
individually and as representative of her
deceased mother JANE DOE 2,
JOHN DOE 3,
individually and as representative of his
deceased brother JOHN DOE 4,
JANE DOE 3,
individually and as representative of her
deceased husband JOHN DOE 5,
MINOR DOES #1-4,
by and through their guardian JOHN DOE 6,
individually and as representative of their
deceased mother JANE DOE 4,
JOHN DOE 7,
individually and as representative of his
deceased son JOHN DOE 8,
JANE DOE 6,
JANE DOE 5,
JANE DOE 7, et. Al.,

Plaintiffs-Appellants,

versus

CHIQUITA BRANDS INTERNATIONAL, INC.,

Defendant-Appellee,

MOE CORPORATIONS 1-10, et. Al.,

Defendants.

_____

9:08-cv-80465-KAM

JANE/JOHN DOES (1-144),
as Legal Heirs to Peter Does 1-144, et. Al.,

Plaintiffs-Appellants,

versus

CHIQUITA BRANDS INTERNATIONAL, INC.,

Defendant-Appellee,

DAVID DOES 1-10, et. Al.,

Defendants.

_____

9:08-cv-80508-KAM

JOSE LEONARDO LOPEZ VALENCIA, et. Al.,

Plaintiffs-Appellants,

versus

CHIQUITA BRANDS INTERNATIONAL, INC.,
a New Jersey corporation,

Defendant-Appellee,

MOE CORPORATIONS 1-10, et. Al.,

Defendants.

_____

9:17-cv-81285-KAM

DOES,
1-11,

Plaintiffs-Appellants,

versus

CARLA A. HILLS,
Personal Representative of the Estate of
Roderick M. Hills,

Defendant.

_____

9:18-cv-80248-KAM

JOHN DOE #1, et. Al.,
individually and as representative of his
deceased father JOHN DOE 2,

Plaintiffs-Appellants,

versus

CHIQUITA BRANDS INTERNATIONAL, INC.
a New Jersey corporation,

Defendant-Appellee,

MOE CORPORATIONS 1-10, et. Al.,

Defendants.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(July 16, 2020)

Before WILSON, MARCUS, and BUSH,[*] Circuit Judges.

PER CURIAM:

A lawsuit is a public event.  Parties who ask a court to resolve a dispute must typically walk in the public eye.  District courts, acting within their discretion, can grant exception from this rule.  But it is rare for a district court to grant privacy protections for a party.  It is even rarer for a district court to abuse its discretion when denying privacy protections for a party.

The appellants here claim that this is one of those rarer cases.  In this multidistrict litigation (MDL), they contend that a Colombian paramilitary group killed their family members.  They also assert that appellee Chiquita Brands International, Inc.—along with affiliated entities and directors, but we will call

_____

[*] Honorable John K. Bush, United States Circuit Judge for the Sixth Circuit, sitting by designation.

5

them all Chiquita for short—paid the paramilitary group over $1.7 million to quell labor unrest and drive other guerilla groups out of the banana-growing regions of Colombia. This financial support, say the appellants, contributed to the deaths of their family members.

Some appellants, fearing paramilitary retaliation, filed their claims under pseudonyms. All appellants—named and pseudonymous—obtained a protective order prohibiting the disclosure of "private facts"—facts that could reveal their identities or other personal information (addresses, telephone numbers, and so on).

After over a decade of litigation, Chiquita challenged the privacy protections as difficult and unnecessary. The district court agreed and revoked the protections. The appellants appealed under the collateral-order doctrine. Because the district court acted within its discretion when it held that the appellants failed to meet their necessary burdens, we affirm.

## I.

First, some background. Over a decade ago, Chiquita admitted to financing paramilitaries in Colombia.[1] The United States filed an information against Chiquita, outlining the company's involvement. Chiquita ultimately entered a guilty plea and paid a $25 million fine.

---

[1] *See generally United States v. Chiquita Brands Int'l*, 1:07–cr–00055 (D.D.C.).

A bevy of related civil suits followed. The appellants, then proceeding in separate cases, generally claimed that Chiquita bankrolled a paramilitary group called the Autodefensas Unidas de Colombia (AUC). They also alleged that Chiquita's money helped the AUC murder their family members. Fearing reprisal from the AUC or its affiliates, some appellants sought to proceed anonymously (the pseudonymous appellants). Others did not (the named appellants).[2] Alongside the named appellants, hundreds of other plaintiffs chose to proceed under their true names.

Of the pseudonymous appellants, some received court approval to use pseudonyms. Others did so without court approval. Eventually, their cases— along with the cases of the named appellants and other related plaintiffs—were merged into an MDL in the Southern District of Florida.

In the MDL, Chiquita moved to dismiss the case for *forum non conveniens*. It argued that Colombia was the proper forum. In November 2016, the district court denied the motion. Taking the plaintiffs' allegations as true and viewing the evidence in their favor, the court noted that "participation in human rights litigation involving paramilitary abuses in Colombia . . . is currently a very dangerous proposition."

---

[2] When referring to these groups collectively, we will call them the appellants.

The case then moved to discovery.  During this process, the district court recognized that the pseudonymous appellants were proceeding anonymously.  It did not, however, consider the propriety of their pseudonyms.

Meanwhile, the parties grappled over what protections to include in a proposed protective order.  Both sides generally agreed that the appellants needed protection to combat the disclosure of their "private facts"—facts that could publicly reveal their identities or personal information.  They volleyed draft protective orders back and forth.  When the dust settled, the district court issued a protective order under Federal Rule of Civil Procedure 26(c) that largely entered all the requested private fact protections.  The order did not shield these facts from Chiquita, though.  Chiquita knows the pseudonymous appellants' identities and has received private fact discovery.

These protections stood for about two years.  During this time, the parties picked the appellants to serve as bellwether plaintiffs for dispositive motions and bellwether trials.[3]  As the parties inched toward summary judgment, though, the administrative cost of anonymous litigation took its toll.  Seeing no need for the privacy protections, Chiquita moved to preclude the pseudonymous appellants' use of pseudonyms and to modify the protective order to lift the appellants' protections

---

[3] This meant that the appellants would serve as representatives for initial trials and dispositive motions.

for private facts.  In April 2019, the court granted both requests in a joint order.  It held that the pseudonymous appellants failed to establish that their risk of physical harm outweighed the general presumption of judicial openness.  The court thus ordered the pseudonymous appellants to reveal their identities.  And for the same reasons, it lifted the private fact protections for all appellants—named and pseudonymous.  The appellants then appealed the court's order under the collateral-order doctrine.  We stayed the court's rulings pending our decision.

After the appellants filed their notice of appeal, the district court entered summary judgment on the merits against all the appellants save for one (Jane Doe 46).  The district court then certified the summary judgment ruling as a final judgment under Federal Rule of Civil Procedure 54(b).  The appellants (Jane Doe 46 excluded) also appealed that ruling.  The summary judgment appeal remains pending in a separate proceeding.

## II.

Before we reach the merits, we'll first explain why this appeal is not moot for the appellants who have sustained summary judgment.  Then we will analyze both the district court's denial of pseudonym protection and its decision to modify its order protecting private facts.

## A.

9

A federal court cannot decide a "moot" controversy.  *See Fla. Pub. Interest Research Grp. Citizen Lobby, Inc. v. E.P.A.*, 386 F.3d 1070, 1086 (11th Cir. 2004). We thus have an independent duty to ensure that this case is not moot.  *See id.* at 1083, 1086.  "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Id.* at 1086.  This can happen when events after the filing of the appeal "deprive the court of the ability" to provide "meaningful relief."  *Id.*

We can provide meaningful relief here.  If we were to let the court's order stand, the pseudonymous appellants would have to reveal their identities and the appellants would have no protection for their private information.  But if we were to vacate the district court's order, the pseudonymous appellants would remain anonymous and the appellants' private facts would remain protected.  Given the seriousness of the subject matter, that is no doubt "meaningful relief."  *See id.*

But there is a slight wrinkle: The district court entered summary judgment against most of the appellants and certified the ruling as a final judgment.  Those appellants are challenging the summary judgment ruling in a different appeal.  We have held, at least in the preliminary injunction context, that "[o]nce a final judgment is rendered, the appeal is properly taken from the final judgment." *Burton v. Georgia*, 953 F.2d 1266, 1272 n.9 (11th Cir. 1992).  If that rule also applies to collateral orders, then we could not grant meaningful relief here.  The

10

appellants would instead need to raise their anonymity and private fact issues in the summary judgment appeal.

But having reviewed *Burton* and its predecessors, we feel confident that its rule does not apply to collateral orders. *Burton* merely restated a commonsense principle: A permanent injunction order moots interlocutory review of a corresponding preliminary injunction order because the preliminary injunction order inherently "merge[s]" with the permanent injunction order. *See Sec. & Exch. Comm'n v. First Fin. Grp. of Tex.*, 645 F.2d 429, 433 (5th Cir. Unit A May 1981)[4]; *Birmingham Fire Fighters Ass'n 117 v. City of Birmingham*, 603 F.3d 1248, 1254 (11th Cir. 2010) (explaining that "when a final injunction incorporates the same relief as an interlocutory injunction, an appeal is properly taken only from the final order" and the interlocutory appeal is moot).

This rule makes sense. The standard for entering a preliminary injunction echoes the standard for entering a permanent injunction. *Compare Chavez v. Fla. SP Warden*, 742 F.3d 1267, 1271 (11th Cir. 2014) (outlining the preliminary injunction standard), *cert. denied*, 571 U.S. 1188 (2014), *with Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008) (outlining the permanent injunction standard). When a permanent injunction order and a

---

[4] In *Bonner v. City of Prichard*, we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

11

preliminary injunction order raise the same questions, it makes little sense to have parallel panels deliver disjointed answers. Rather, the preliminary order is best viewed as merging with the final order, as both orders speak to the merits of whether the requested injunctive relief is appropriate. *See Birmingham Fire Fighters*, 603 F.3d at 1254.

But that's not true of collateral orders. Those orders, per the Supreme Court, do "not make any step toward final disposition of the merits" and "will not . . . merge[] in a final judgment." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). We dub an order collateral only if it "(1) conclusively determines an important issue that is both (2) completely separate from the merits of the case and (3) effectively unreviewable on appeal from a final judgment." *Parker v. Am. Traffic Solutions, Inc.*, 835 F.3d 1363, 1367 (11th Cir. 2016). Those traits differ from that of a merged preliminary injunction—an order that both speaks to the merits of whether injunctive relief is appropriate and can be adequately reviewed on appeal from the final injunctive order. *See Birmingham Fire Fighters*, 603 F.3d at 1254.

Because the key aspects of a collateral order and a preliminary injunction do not line up, we hold that *Burton*'s rule does not apply to collateral orders. The only question, then, is whether the rulings at issue qualify as collateral orders.

12

The pseudonym ruling is easy. "A district court's order denying anonymity for a party is a final appealable order under the collateral order doctrine." *Plaintiff B v. Francis*, 631 F.3d 1310, 1314 (11th Cir. 2011).

Next is the private fact ruling. Though we have never considered whether a ruling that modifies a protective order to revoke protections that conceal a party's identity and private information from allegedly dangerous actors qualifies as a collateral order, we conclude that it does. As said before, a collateral order is one that "(1) conclusively determines an important issue that is both (2) completely separate from the merits of the case and (3) effectively unreviewable on appeal from a final judgment." *Parker*, 835 F.3d at 1367. The private fact ruling meets each criterion.

First up is the important-issue prong. An issue is "important" enough to justify collateral review when it involves a "particular value of a high order." *See Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1356 (11th Cir. 2014). The issue must usually touch on a "substantial public interest." *See id.* at 1357. As the Ninth Circuit has explained, "[f]ew tenets of the United States justice system rank above the conflicting principles presented" when a party seeks to shield information in a judicial proceeding from public view. *See Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1038 (9th Cir. 2010). In these situations, courts must weigh "the transparency and openness of this nation's court

13

proceedings" against "the ability of private individuals to seek redress in the courts without fear for their safety." *Id.* And as we explained in *Doe v. Frank*, there are "exceptional cases" in which a plaintiff may face so great a "danger of physical harm" that the plaintiff's interest in access to the judicial system outweighs the public's interest in judicial openness. 951 F.2d 320, 324 (11th Cir. 1992) (per curiam).

The district court's order conclusively denied protections intended to shield the appellants' sensitive information from paramilitaries. Given the serious "danger of physical harm" alleged here, we conclude that protecting the appellants' access to the judicial system is an important issue touching on substantial public interests. *See id.*; *Royalty Network*, 756 F.3d at 1356–57.

We make quick work of the latter two prongs. Whether the appellants should have these protections is distinct from whether they should recover against Chiquita. *See Parker*, 835 F.3d at 1367. And once the public (or a paramilitary group) learns the appellants' private facts, they cannot be concealed again. *See S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712 (5th Cir. 1979) (*SMU*). This information, without a protective order, may come out at summary judgment or in other court filings. So the order is effectively unreviewable on appeal from the final judgment. *See Parker*, 835 F.3d at 1367.

Because both rulings are valid collateral orders, they do not merge into the final judgment. *Burton* therefore does not apply. And since this appeal remains live, we now turn to the merits.

## B.

First is the ruling denying the pseudonymous appellants leave to proceed under pseudonyms. We review a district court's ruling on a party's use of a pseudonym for abuse of discretion. *Plaintiff B*, 631 F.3d at 1315; *Doe v. Stegall*, 653 F.2d 180, 184 (5th Cir. Unit A Aug. 1981). This is an "extremely limited and highly deferential" standard of review. *In re Clerici,* 481 F.3d 1324, 1331 (11th Cir. 2007). It allows "a zone of choice within which" the district court "may go either way." *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc). We must affirm the district court's choice "unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." *Id.* This is so "even if we would have gone the other way had the choice been ours to make." *S.E.C. v. ETS Payphones, Inc.*, 408 F.3d 727, 733 (11th Cir. 2005) (per curiam).

"Generally, parties to a lawsuit must identify themselves" in the pleadings. *Frank*, 951 F.2d at 322. Federal Rule of Civil Procedure 10(a) provides that "every pleading" in federal court "must name all the parties." The rule does not merely further administrative convenience—"[i]t protects the public's legitimate

15

interest in knowing all of the facts involved, including the identities of the parties." *Plaintiff B*, 631 F.3d at 1315.

Yet the rule is not absolute. A party may proceed anonymously in federal court by establishing "a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Id.* at 1315–16 (internal quotation mark omitted). This is, however, a narrow exception. Parties may use "fictitious name[s]" only in "exceptional case[s]." *Frank*, 951 F.2d at 323.

We have said that the "first step" in deciding whether privacy trumps publicity is to apply the "three factors analyzed" in *SMU*. *Plaintiff B*, 631 F.3d at 1316. Those factors include whether the party seeking anonymity (1) is challenging government activity; (2) would be compelled, absent anonymity, to disclose information of utmost intimacy; or (3) would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution. *See id.*

But we have made clear that this is only the first step. Along with these factors, a court "should carefully review *all* the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity

16

should yield to the plaintiff's privacy concerns." *Id.*[5]  Other factors to consider include whether the party seeking anonymity is a minor or faces a real threat of physical harm absent anonymity.  *See id.*; *see also Stegall*, 653 F.2d at 186.  The court should also analyze whether the party's requested anonymity poses a unique threat of fundamental unfairness to the defendant.  *See SMU*, 599 F.2d at 713 (listing examples).  Indeed, a defendant's "general plea for 'openness' is not convincing" when stacked against "strong evidence" supporting a need for anonymity.  *Plaintiff B*, 631 F.3d at 1318.

Turning to the analysis, we start with the pseudonymous appellants' claim that the district court erred when it gave them the burden of justifying their pseudonyms.  In their eyes, the district court granted them leave to proceed under pseudonyms in its protective order granting private fact protections.  The pseudonymous appellants thus claim that Chiquita—as the party seeking to modify the protective order—bore the burden of establishing good cause for the modification.  *See F.T.C. v. AbbVie Prods. LLC*, 713 F.3d 54, 66 (11th Cir. 2013).

---

[5] Given this rule, we note that, in reality, the *SMU* factors do not constitute a "first" step in the sense that either party can win at that step alone.  Though a court must consider the *SMU* factors (and may well decide to consider them first), our mandate that a court must consider "*all* the circumstances of a given case" makes clear that the *SMU* factors are merely a few of many factors that a court must consider.  *See Plaintiff B*, 631 F.3d at 1316.  In practice, then, whether a party's right to privacy overcomes the presumption of judicial openness is a totality-of-the-circumstances question.

17

We disagree. Nowhere in the protective order did the district court grant the pseudonymous appellants leave to proceed anonymously. As the district court recognized in a later order, it never considered the propriety of pseudonyms until Chiquita moved to preclude the use of pseudonyms. Thus, the pseudonymous appellants bore the burden to establish, in the first instance, that their privacy rights outweigh the presumption of judicial openness. *See Plaintiff B*, 631 F.3d at 1315–16.

Because the district court did not make an error of law, we can vacate only if the district court made a clear error of judgment. Given this record, we hold that the district court acted within its "zone of choice" when it held that the pseudonymous appellants failed to show that their privacy rights outweigh the presumption of judicial openness. *See Frazier*, 387 F.3d at 1259.

To start, the district court had ample comparator evidence to support its ruling. For over a decade, hundreds of plaintiffs have litigated this case under their true names, and yet nothing in the record suggests that they have faced paramilitary retaliation. We of course know that different litigants may face different risks of harm; the pseudonymous appellants could face a greater risk of paramilitary retribution than their named co-plaintiffs. But the pseudonymous appellants gave no evidence to establish that they in fact face a greater risk of harm. So the district court was free to consider the named plaintiffs as

18

comparators when weighing the pseudonymous appellants' risk of harm against the presumption of judicial openness.

To be sure, the pseudonymous appellants claim that there is specific evidence of harm here: Paramilitaries allegedly threatened and attacked a named bellwether plaintiff and her family four months after her deposition. Yet the district court reasonably rejected this inference. True, no one seems to dispute that someone threatened and attacked the bellwether plaintiff and her family. But the only credible evidence to suggest that paramilitaries assaulted her and her family for her role here is temporal proximity. A four-month connection, however, is shaky support standing alone. And there is evidence pointing the other way. For example, the bellwether plaintiff's deposition was privileged and highly confidential, suggesting that paramilitaries could not have known about the deposition. There is also evidence showing that the alleged incidents were part of a domestic dispute unrelated to this litigation. So the district court acted within its discretion when it held that there was "insufficient evidence of a causal connection between the . . . attack and litigation activity in this MDL proceeding to justify continued use of pseudonyms."[6]

---

[6] We reject the claim that an affidavit filed by the bellwether plaintiff's counsel compelled the district court to find that paramilitaries threatened and attacked the plaintiff and her family. The attorney admitted in the affidavit that he has no firsthand knowledge of the incidents; he drew his statements solely from the secondhand accounts of nameless investigators in Colombia. The attorney also asserted that paramilitaries were presumably to blame, yet he gave no meaningful

19

Lacking specific evidence, the pseudonymous appellants cite general evidence showing that those who oppose paramilitary groups or paramilitary-affiliated entities face risks of paramilitary violence. But this evidence does not compel the conclusion that the MDL plaintiffs face those risks. Indeed, their evidence focuses on human rights defenders who protest paramilitary activity in Colombia, seek land restitution in Colombia, or oppose paramilitary-affiliated entities in Colombia. The evidence does not compel the finding that litigants pursuing tort claims against a paramilitary-affiliated entity in the United States face similar risks of harm.[7]

Last, we reject the idea that the court's pseudonym ruling conflicts with its *forum non conveniens* ruling. We do so for a few reasons. For one, a *forum non conveniens* analysis differs from a pseudonym analysis. *Compare Ford v. Brown*, 319 F.3d 1302, 1306–07 (11th Cir. 2003) (outlining the *forum non conveniens* analysis), *with Plaintiff B*, 631 F.3d at 1313–18 (outlining the pseudonym analysis). For another, the court's statements there were not factual findings; because the *forum non conveniens* order came on a motion to dismiss, the court

---

support for this presumption. Given these deficiencies, the district court was free to give the affidavit little weight.

[7] The pseudonymous appellants also contend that the district court erred in failing to consider the heightened publicity they will face as the case moves toward trial. We're not convinced that the district court failed to consider this argument, as the court said in its order that it had considered all the proffered arguments. But at any rate, the pseudonymous appellants failed to support this argument with evidence. On this record, their publicity claim is speculative and is not enough to justify vacatur for abuse of discretion.

took the plaintiffs' allegations as true and construed all the evidence in their favor. *See* Doc. 1194 at 4. That plaintiff-friendly standard diverges from the defendant-friendly pseudonym standard. Finally, the court entered the *forum non conveniens* order over two years before it entered its pseudonym order. During that time, hundreds of plaintiffs continued to litigate under their true names, yet none—as far as this record shows—suffered paramilitary retribution. As a result, the district court's *forum non conveniens* ruling did not compel a different pseudonym ruling.[8]

## C.

We now turn to the modification of the protective order, which lifted the appellants' protections for private facts. We review a district court's decision to modify a protective order for abuse of discretion. *AbbVie*, 713 F.3d at 61. The district court did not abuse its discretion here.

We begin with a review of the law. Federal Rule of Civil Procedure 26(c) allows a court to issue a protective order upon a finding of good cause. *See* Fed. R. Civ. P. 26(c) ("The court may, for good cause, issue [a protective order]."). The plain text of the rule suggests that a district court <u>must</u> find good cause to issue a

---

[8] We also dismiss the pseudonymous appellants' claim that the district court erred because it identified no "unique threat" that their anonymity poses to Chiquita. Though we agree that their anonymity does not prejudice Chiquita since it knows the pseudonymous appellants' identities, prejudice is just one of many factors that a court should consider. *See Plaintiff B*, 631 F.3d at 1316. Given the wealth of evidence undercutting the pseudonymous appellants' risk of harm, the little evidence establishing it, and the presumption of judicial openness, the court acted within its discretion when it denied anonymity, even without a showing of prejudice.

21

protective order. *See id.* But as we've recognized, district courts often issue stipulated protective orders without finding good cause. *See Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1307 (11th Cir. 2001) (per curiam).

Some say that these stipulated orders violate Rule 26(c)'s good cause mandate.[9] But it seems that we, at least, have acknowledged the practice. *See id.* In *Chicago Tribune*, we considered a motion to modify a stipulated protective order. *Id.* at 1308–09. In the motion, a post-settlement intervenor sought to remove protections that the original parties had agreed to in a stipulated order. *Id.* at 1308–10. Noting the difference between a protective order entered for good cause and a stipulated order, we expressed no issue with the stipulated order. *See id.* at 1307. Instead, we recognized that the party seeking continued protection from the stipulated order (i.e., the party opposing the modification) had never established good cause for the protection in the first place. *See id.* For this reason, we placed the burden of establishing good cause in the first instance on the party seeking the protection. *See id.* at 1313. *Chicago Tribune* thus creates a bright-line

---

[9] *See, e.g.*, *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994) ("In deciding whether to issue a stipulated protective order, the district court must independently determine if 'good cause' exists."); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 785 (3d Cir. 1994) (noting that, "[d]isturbingly, some courts routinely sign orders which contain confidentiality clauses without considering the propriety of such orders, or the countervailing public interests which are sacrificed by the orders"); *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 229 n.1 (6th Cir. 1996) (Brown, J., dissenting on other grounds) ("'Good cause' must, however, still be shown for the court to issue a stipulated order [under Fed. R. Civ. P. 26(c)].").

22

rule: When faced with a motion to modify to a *stipulated* protective order, the party seeking the stipulated order's protection must satisfy Rule 26(c)'s good cause standard.

The burden differs, though, when a court enters a *disputed* protective order after finding good cause. When a party disputes a protective order, the plain language of Rule 26(c) applies—the party seeking the protection must establish good cause for the protection. *See* Fed. R. Civ. P. 26(c). And once a party has established good cause under Rule 26(c), the party moving to modify the protective order bears the burden to establish good cause for the modification. *See AbbVie*, 713 F.3d at 66 (holding that "[a] party who has already shown good cause . . . in the first instance should not bear the burden of showing good cause once again if the same opposing party seeks modification of the original protective order").

Applying these principles, we can discern no abuse of the district court's considerable discretion in modifying its protective order, which lifted the appellants' protection of "private facts." For starters, the district court interpreted its protective order to have been stipulated by the parties. Indeed, it said so at least six times in its order.[10] And our case law has repeatedly held that "[a] district

---

[10] The order is captioned "Order . . . Granting in Part and Denying in Part Motion to Modify <u>Stipulated</u> Protective Order's Prohibition . . . ." (emphasis added) The district court later referred to the order as the parties' "<u>stipulated</u> Protective Order" twice, the "<u>agreed-upon</u> Protective Order" the parties submitted, and a "<u>stipulated</u> agreement" and characterized Chiquita's motion as withdrawing its "initial <u>consent</u>" to the protective order (all emphases added).

court's interpretation of its own order is properly accorded deference on appeal when its interpretation is reasonable." *In re Managed Care*, 756 F.3d 1222, 1234 (11th Cir. 2014) (quoting *Cave v. Singletary*, 84 F.3d 1350, 1354 (11th Cir. 1996)); *see also Foudy v. Indian River Cty. Sheriff's Office*, 845 F.3d 1117, 1122 (11th Cir. 2017) ("[W]e review a district court's interpretation of its *own* orders for an abuse of discretion . . . ."). The district court's interpretation of its own order was entirely reasonable—the record shows that neither party ever disputed, challenged, or litigated the protective order's restrictions on the disclosure of information about the appellants in any way. Thus, in order to be entitled to the continued protection of "private facts," the burden plainly fell on the appellants to establish "good cause."

The district court found that the appellants failed to do so for the same reasons that they were not entitled to continue proceeding under pseudonyms. The problem with their showing remained the same: in neither instance did the appellants establish a sufficient nexus between the claimed threats and the disclosure of their identities; the proffered facts were neither specific nor concrete, and the appellants gave no other justification for their private fact protections. Although the district court did not specifically cite the governing standard for "good cause" found in Rule 26(c), we cannot find an abuse of discretion in its analysis. Two reasons yield this result: in the first place, it made sense to read

24

these issues together here because they were factually and logically intertwined; and second, the district court's analysis satisfied the most critical Rule 26(c) factor—balancing the potential harm to the appellants against the interests of the other parties in the case.

For one thing, it was entirely reasonable for the district court to consider jointly whether to modify the order protecting private facts together with allowing the pseudonymous appellants to continue under pseudonyms. Indeed, these issues, at least in this case, were so tightly woven together that there was little logical reason to consider them separately. The appellants gave only one justification for their pseudonyms and their private fact protections: Fear of harm from paramilitaries. Once the district court rejected this reason as unfounded and denied leave to proceed under pseudonym, the appellants no longer had a justification to satisfy good cause, and so there was little reason not to also modify the protective order.

The district court's analysis also focused on the most critical elements governing the application of Rule 26(c). Among other things, we have asked the district courts to look at "[1] the severity and the likelihood of the perceived harm; [2] the precision with which the order is drawn; [3] the availability of a less onerous alternative; and [4] the duration of the order," *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987) (per curiam) (quotation omitted),

25

but, notably, these factors are not exhaustive, *see id.* ("[T]he sole criterion for determining the validity of a protective order is the statutory requirement of 'good cause' . . . . [Which is] difficult to define in absolute terms [but] generally signifies a sound basis or legitimate need to take judicial action."). Furthermore, we have required the trial courts to engage in the "balancing of interests" under Rule 26(c). *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985).

The district court engaged in balancing sufficient to satisfy Rule 26(c), as it weighed the appellants' safety interests against Chiquita's interests in administrative feasibility. Further, when we review the entire record, including the protective order and the district court's order dissolving part of it, there can be no question that the court's order was drawn with precision, effectively reviewed less onerous alternatives, and precisely delimited the duration of the order.

Indeed, the trial court found that the evidence presented by the appellants supported only "a vague fear [of] retaliation or bias against 'human right[s] defenders' . . . but [did] not explain how their role in this lawsuit . . . would implicate the same interests as those triggered by 'human right[s] defenders' in present-day Colombia." The appellants' "generalized, subjective assertions of fear" were simply not "the kind of risk of physical or other injury" required to treat them differently than other plaintiffs. Much the same analysis was applicable in determining "good cause" under Rule 26(c). *See Gulf Oil Co. v. Bernard*, 452 U.S.

26

89, 102 n.16 (1981) ("To establish 'good cause' for a protective order under Federal Rule of Civil Procedure 26(c), the courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." (quotation omitted and alterations adopted)).  And without a distinct concrete harm justifying good cause, the appellants were no more entitled to protection from disclosure of their identities than they were to file pleadings under pseudonyms.

In sum, then, we see little reason to remand this issue back to the district court, since the district court weighed the critical factors and did not abuse its discretion in finding no basis to protect either the pseudonyms or the appellants' private facts.  Accordingly, we **AFFIRM**.